UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMIR FAGHRI,<br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF CONNECTICUT<br>ET AL.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br>CIVIL ACTION NO.<br>3:06-cv-01957 (VLB)<br><br><br>March 30, 2009 |

**MEMORANDUM OF DECISION DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #57]**

The defendants, the University of Connecticut ("UConn"), former UConn President Philip Austin, and UConn Provost Peter Nicholls, move for summary judgment in this action filed by the plaintiff, Amir Faghri, a tenured professor of mechanical engineering at UConn and former dean of its engineering school. Faghri claims that the defendants improperly removed him from his position as dean because he exercised his First Amendment right to free speech. Faghri's second amended complaint asserts two counts against UConn for violating Conn. Gen. Stat. § 31-51q, which imposes liability on an employer for the discipline or discharge of an employee on account of the employee's exercise of certain constitutional rights. Faghri also asserts two counts against Austin and Nicholls pursuant to 42 U.S.C. § 1983 for violating his right to free speech and depriving him of his right to procedural due process because he had a protected property interest in the deanship and was not afforded a hearing prior to his removal. The defendants move for summary judgment on the following grounds:

**First, Faghri's speech was not protected by the First Amendment because he did not speak as a citizen on a matter of public concern; second, he was not deprived of procedural due process because he did not possess a protected property interest in the deanship; and third, Austin and Nicholls are entitled to qualified immunity. For the reasons given below, the defendants' motion for summary judgment [Doc. #57] is DENIED.**

**The following undisputed facts are relevant to the defendants' motion. Faghri commenced his employment at UConn as a tenured professor in 1994. He was appointed dean of UConn's engineering school on May 18, 1998. Upon the completion of his fifth year in that position, he was reappointed to a second five-year term on May 21, 2003. He was also appointed the United Technologies Endowed Chair Professor in Thermal-Fluids Engineering on September 9, 2004. Austin and Nicholls decided to remove Faghri from the deanship on June 2, 2006. Faghri continues to serve at UConn as a tenured professor, and he retains his endowed chair.**

**Faghri opposed several decisions made by the defendants before they stripped him of his deanship. In letters, e-mail messages, and at meetings, Faghri expressed his opposition to the following subjects: (1) A plan to open a UConn branch campus in Dubai, United Arab Emirates; (2) the restructuring of UConn's School of Allied Health, School of Family Studies, and College of Continuing Education; (3) Austin's alleged mismanagement of a large amount of state funds provided pursuant to an initiative known as "UConn 2000"; (4) a**

**proposal by the state legislature to fund a new research center known as the Connecticut Center for Advanced Technology; and (5) UConn's decision to pay a fine resulting from an audit of its federal research grants.**

**The defendants deny that they removed Faghri from the deanship because of the content of his statements. Instead, they maintain that they removed him because he behaved in a disruptive manner. Furthermore, they state that faculty complained about Faghri and expressed a lack of confidence in his leadership. The defendants' motion for summary judgment is presently before the Court.**

**Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." Huminski, 396 F.3d at 69. "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002). "If the**

**party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).**

**The Court begins by examining Faghri's First Amendment claim against Austin and Nicholls pursuant to § 1983. "To establish a prima facie case of First Amendment retaliation, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. . . . Regardless of the presence of [a] retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003).**

**As to the first element of the prima facie case, the defendants argue that Faghri's speech was not protected. "Whether public employee speech is protected from retaliation under the First Amendment entails two inquiries: (1) whether the employee spoke as a citizen on a matter of public concern and, if so, (2) whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008). "Whether an**

**employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record. . . . The heart of the matter is whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose." Id. at 189.**

**The defendants argue that Faghri made the statements at issue in his official capacity in performance of his duties as dean and not as a citizen. According to the defendants, a dean would be expected to make statements on a broad range of subjects related to UConn, as Faghri did. The defendants further argue that three of Faghri's statements related to personal grievances. Specifically, Faghri opposed the restructuring of UConn's School of Allied Health, in which his wife was a professor. He also opposed the state legislature's proposal to fund a new research center that would compete for funding against his research center. They also contend that he opposed UConn's decision to pay a fine resulting from an audit of its federal research grants, whose recipients were supervised by Faghri.**

**However, the defendants do not argue that Faghri had a personal stake in the proposed Dubai branch campus or the alleged mismanagement of the "UConn 2000" program. The defendants also do not argue that Faghri's official duties required him to make statements on behalf of UConn about those subjects.**

**Matters of public concern include "the proper administration of State**

**facilities"; Hale v. Mann, 219 F.3d 61, 71 (2d Cir. 2000); and "the public fisc"; Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999). The Court therefore concludes that the establishment of a foreign branch campus and the management of a large amount of state funds for the "UConn 2000" program are matters of public concern.**

**The second prong of the First Amendment inquiry is whether the defendants had an adequate justification for removing Faghri from the deanship because of his statements. The defendants have represented that they did not remove Faghri from the deanship because of the content of his statements but rather because of the disruptive manner in which he made them. According to the defendants, other deans complained that Faghri shouted and interrupted them at meetings. The defendants also allege that Faghri used disruptive language to describe his superiors, including Austin and Nicholls, as immoral, unethical, and dishonest. The defendants "contend that actual disruption of [UConn's] activities occurred because [Nicholls] and others . . . had to undertake efforts, such as meeting with officials of the United Arab Emirates, to correct misinformation provided by [Faghri] and to renew confidence in the UConn leadership." [Doc. #62, p. 23]**

**In opposition, Faghri avers that his statements "did not interfere with either my job performance or my working relationships. For example, after I voiced my objection concerning the closing of the Schools and Colleges, I was able to continue working together with Nicholls and there was no disruption to our**

**meetings or decision-making." [Doc. #66, Ex. I, p. 5]**

**The Court concludes that it would need to assess the credibility of the witnesses in order to determine whether Faghri's behavior was disruptive and whether the defendants would have removed him from the deanship regardless of the content of his statements. "Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." McClellan v. Smith, 439 F.3d 137, 148 (2d Cir. 2006) (quoting United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994)). Accordingly, the First Amendment inquiry is at its end. The defendants are not entitled to summary judgment because at least some of Faghri's speech is protected from retaliation.**

**Returning to the elements of Faghri's prima facie case of First Amendment retaliation, the defendants concede the existence of the second element, namely, that Faghri suffered an adverse employment action because he was removed as dean.**

**The defendants argue that the third and final element of Faghri's prima facie case has not been established, namely, a causal connection between Faghri's protected speech and his removal as dean. The defendants contend that there is a lack of temporal proximity between Faghri's protected speech and the adverse action because the speech occurred six months or longer prior to his removal from the deanship. Faghri avers that his protected speech occurred as recently as one and one-half months before his removal as dean. Faghri's**

**credibility is clearly key to resolving the issue. Therefore, summary judgment is not appropriate. The Court concludes that Faghri has sufficiently established a causal connection between his protected speech and his removal as dean for the purpose of making his prima facie case of First Amendment retaliation. Faghri can accordingly maintain his § 1983 claims against Austin and Nicholls.**

**Faghri's claims against UConn pursuant to Conn. Gen. Stat. § 31-51q[1] require the same First Amendment analysis already undertaken by the Court. See Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 778-85, 734 A.2d 112 (1999) (setting forth the same First Amendment analysis for claims under Conn. Gen. Stat. § 31-51q). In Daley, the Connecticut Supreme Court held that the trial court properly exercised its discretion to allow the jury to decide whether a matter of public concern was addressed when an employee was terminated after writing a memorandum to the company chairperson expressing dissatisfaction with the company's "family friendly" workplace policies. For the reasons stated above, there are genuine issues of material fact as to the relationship between Faghri's protected speech and his removal as dean, precluding summary judgment on the § 31-51q claims.**

---

**[1] Conn. Gen. Stat. § 31-51q provides in relevant part: "Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge . . . ."**

The Court next examines Faghri's procedural due process claim against Austin and Nicholls. The Court must consider "(1) whether [Faghri] possess[es] a liberty or property interest protected by the Due Process Clause; and, if so, (2) whether existing state procedures are constitutionally adequate." Ford Motor Credit Co. v. NYC Police Dept., 503 F.3d 186, 190 (2d Cir. 2007). Austin and Nicholls move for summary judgment as to the procedural due process claim only on the ground that Faghri did not have a property interest in the deanship. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . Such entitlements are, of course . . . not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005).

In support of their argument that Faghri lacked a property interest in the deanship, the defendants cite a UConn policy for deans that provides in relevant part: "Appointments are *generally made* for a specified duration with the understanding that the Dean serves at the pleasure of the Provost." (Emphasis added.) [Doc. #62, p. 40] The defendants therefore argue that Nicholls, the provost, had the power to remove Faghri at any time.

In opposition, Faghri points out that his letter of appointment for his second term as dean did not state that he would serve "at the pleasure of the

provost." [Doc. #66, Ex. T] By contrast, his letter of appointment for his first term as dean stated that he would serve at the pleasure of the chancellor. [Doc. #66, Ex. T] Faghri avers that he negotiated the removal of that provision from the appointment letter as a condition of his acceptance of a second term as dean. Faghri therefore argues that he was entitled to serve a full five-year term as dean from 2003 to 2008.

The Court notes the parties' agreement that the 2003 appointment letter did not contain all of the terms of Faghri's employment as dean. Accordingly, it is possible that one of the terms was that Faghri would not serve at the pleasure of the provost. UConn points out that its interim provost sent Faghri a letter announcing his appointment to the endowed professorship on September 22, 2004, and that letter stated in relevant part: "All conditions of employment and benefits associated with your appointment as Dean will remain in place. You will serve at the pleasure of the Provost . . . ." [Doc. #57, Ex. 46] UConn therefore argues that Faghri was indeed serving at the pleasure of the provost during his second term as dean. However, the 2004 letter does not help to resolve the terms of the contract that the parties made more than one year earlier in 2003. The relevant letter is the 2003 appointment letter, and it does not state that Faghri would serve at the pleasure of the provost. Although Faghri's argument is somewhat persuasive, the Court must conclude that there is a genuine issue of material fact whether Faghri had a property interest in his deanship.

The defendants' final ground for summary judgment is that Austin and

**Nicholls are entitled to qualified immunity. "[Q]ualified immunity . . . shields a government official acting in an official capacity from suit for damages under § 1983 unless the official violated clearly established rights of which an objectively reasonable official would have known." Blouin ex rel. Estate of Pouliot v. Spitzer, 356 F.3d 348, 358 (2d Cir. 2004). "This is a doctrine that seeks to balance the twin facts that civil actions for damages may offer the only realistic avenue for vindication of constitutional guarantees, and that such suits nevertheless can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. . . .**

**"The Supreme Court has established a two-part inquiry to determine when a district court should hold that the doctrine of qualified immunity bars a suit against government officials: (1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right, Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); and (2) the court must then consider whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known,' Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)." Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006). The Supreme Court recently explained that the two steps need not be performed in the order given above: "Because the two-step Saucier procedure is often, but not always, advantageous, the judges of**

**the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case. . . . Our decision does not prevent the lower courts from following the Saucier procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." Pearson v. Callahan, 129 S. Ct. 808, 821 (2009).**

**In view of the nuances of each party's claims and the low standard of proof required to sustain a challenge to a motion for summary judgment, there are genuine issues of material fact preventing the Court from concluding that Austin and Nicholls are entitled to qualified immunity. The Court makes that conclusion without prejudice to the defendants' right to raise the issue again at trial or thereafter. At this time, Faghri has sufficiently demonstrated a violation of his First Amendment right to free speech and his right to procedural due process. He has set forth sufficient facts to enable a reasonable jury to find that Austin and Nicholls removed him from the deanship on account of his protected speech, namely, his statements about the proposed Dubai branch campus and the management of the "UConn 2000" initiative. As the Court explained above, there are genuine issues of material fact regarding whether Faghri's behavior was appreciably disruptive and whether the defendants would have removed him from the deanship regardless of the content of his statements. When those factual issues are resolved, the Court could possibly determine that Faghri's constitutional rights were not violated and that it was objectively reasonable for**

**Austin and Nicholls to remove Faghri from the deanship on the ground of disruptive behavior. Faghri has also set forth sufficient facts to enable a reasonable jury to find that he was deprived of procedural due process because he had a property interest in a full five-year term as dean. His rights to make the protected statements and to retain his property interest are clearly established because the law governing those rights has existed for decades. Accordingly, a reasonable person would have known of those rights. Austin and Nicholls are not entitled to qualified immunity at this stage of the case.**

**The defendants' motion for summary judgment [Doc. #57] is DENIED.**

**IT IS SO ORDERED.**

**/s/**
**Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: March 30, 2009.**