UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AMIR FAGHRI, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSITY OF CONNECTICUT, | : | |
| PRESIDENT PHILIP AUSTIN IN HIS | : | |
| INDIVIDUAL CAPACITY, AND PROVOST | : | CIVIL ACTION NO. |
| PETER NICHOLLS IN HIS INDIVIDUAL | : | 3:06-cv-01957 (VLB) |
| CAPACITY, | : | |
| | : | |
| Defendants. | : | June 3, 2010 |

MEMORANDUM OF DECISION DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT [Doc. #92] AND MOTION FOR PRELIMINARY INJUNCTION [Doc. #93]

This matter is before the Court on a motion filed by the Plaintiff, Dr. Amir Faghri, against the Defendant, the University of Connecticut (hereinafter "UConn"), to amend his complaint. Through his proposed amendment, the Plaintiff seeks to allege that UConn notified him that he was being removed from his position as United Technologies Corporation Chair in Thermal Fluids Engineering (hereinafter the "UTC Chair") on February 8, 2010 in retaliation for his filing a lawsuit on November 16, 2006, in deprivation of his right to free speech made actionable by Connecticut General Statutes § 31-51q. In conjunction with his motion to amend, the Plaintiff has also moved for preliminary injunctive relief to bar UConn from removing him from the UTC Chair position.

## I.  BACKGROUND

At all times relevant to this case, the Plaintiff was and remains a tenured

professor in the Mechanical Engineering Department of UConn.  Faghri Aff., Doc. #93-2, ¶ 2.  He served as Dean of UConn's School of Engineering between 1998 and June 2, 2006, when the operative complaint alleges he was removed from that position.  In July 2004, while he was still serving as Dean, the Plaintiff was appointed to the UTC Chair position.  The Plaintiff claims that he was removed from his position as Dean without due process in retaliation for having spoken on various issues of public concern.  Id. ¶ 3.  On November 16, 2006, the Plaintiff filed suit against UConn, Provost Peter Nicholls and President Phillip Austin in order to seek a remedy for his discharge from the position of Dean of the School of Engineering.  The case was removed to this Court on December 5, 2006.

On January 8, 2007, the Court approved the parties' Fed. R. Civ. P. 26(f) report and thereby set a deadline for amending the pleadings of January 16, 2007.  Thereafter, the Plaintiff moved to amend his complaint on January 16, 2007, and again on June 24, 2009.  Both motions were granted by the Court.  Discovery closed in this matter on July 7, 2008.  After the close of discovery, the Defendants filed a motion for summary judgment, which the Court denied by Memorandum of Decision dated March 30, 2009 [Doc. #57].  The individual Defendants filed an interlocutory appeal to the Second Circuit, which was argued on December 8, 2009.  A decision from the Second Circuit is imminent.

The Plaintiff contends that, after he filed this lawsuit, UConn subjected him to a pattern of retaliatory actions, including making unfounded accusations, sending threatening letters and emails to him, ignoring his legitimate written requests, giving him minimal or no merit raises despite distinguished academic achievements, and

2

ignoring his requests for course assignments, office space and appointments to faculty committees.  Id. ¶ 11.  Specifically, he claims that Mun Choi, Dean of the School of Engineering, and Baki Cetegen, the Head of the Mechanical Engineering Department, took actions which have discouraged him from attending faculty meetings and taking a role in the School and Department, and that they have periodically falsely accused him of being "uncollegial."  Id.

The Plaintiff claims that, on or about August 10, 2009, shortly before the his UTC Chair review, Dean Choi announced "updated review criteria."  Id. ¶ 12.  The Plaintiff claims that these new criteria only applied to him, acknowledging that his was the only chair professorship under review at the time.  Dean Choi's new criteria included promoting "collegiality" and meeting "the objectives of the endowment granting entity." Id.  These criteria were not in place at the time that the Plaintiff was appointed to the UTC Chair more than six years earlier and before Choi became Dean.  The Plaintiff contends that the new criteria were intended to justify a negative review of his performance, because otherwise a negative review would be unwarranted given what he characterizes as his "impeccable academic credentials."  In addition to the new criteria, Dean Choi also instituted a review process which the Plaintiff claims to be unprecedented and designed to exclude unbiased knowledgeable opinions from experts in the relevant field (heat transfer) who were best able to evaluate the Plaintiff's academic credentials.  Id. ¶ 13. In particular, the Plaintiff alleges that letters of reference were requested primarily from UConn professors who worked outside of the Plaintiff's area of expertise, contrary to customary practice.  Id.

Following the review process, UConn generated a report dated December 2009

3

which criticized the Plaintiff in the areas of collegiality and leadership and meeting the objectives of United Technologies. Id. ¶ 14. UConn offered to reappoint the Plaintiff on a trial basis for one year with conditions which he believed violated federal tax law and were inappropriate. The Plaintiff communicated his beliefs to Dean Choi, who construed his response as a rejection and, on February 8, 2010, announced that UConn would begin efforts to appoint a new UTC Chair. Id. Choi's letter was copied to defendant Nicholls. Id. On March 11, 2010, the Plaintiff filed a motion for leave to amend his complaint to assert facts concerning UConn's alleged retaliation against him for filing this lawsuit by removing him from the UTC Chair position. UConn objects to the Plaintiff's motion to amend for the reasons stated below. On the same date, the Plaintiff also filed a motion for preliminary injunction, seeking to bar UConn from removing him from the UTC Chair position.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a complaint after a responsive pleading has been filed should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a). Courts should grant applications to amend unless there is good reason to deny the motion such as "futility, bad faith, undue delay, or undue prejudice to the opposing party." Min Jin v. Metro Life Ins. Co.,310 F.3d 184, 101 (2d Cir. 2002). A separate standard, however, applies for modifications to a scheduling order under Federal Rule of Civil Procedure 16. That rule provides that such a schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b).

4

The more onerous "good cause" standard applies where a scheduling order sets a deadline for amending a complaint.  See Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir. 2000); Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003); Lincoln v. Potter, 418 F. Supp. 2d 8 443, 453 (S.D.N.Y. 2006) ("When a party moves to amend the pleadings after the deadline to do so in the court's scheduling order has passed, he must satisfy the good cause requirement of Fed. R. Civ. P. 16(b) . . ."). "'Good cause' requires a greater showing than 'excusable neglect.'  At a minimum, good cause requires a showing by the moving party of an objectively sufficient reason for extending a deadline such that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.  The inquiry focuses on the moving party's reason for requesting the extension."  Pyke v. Cuomo, No. 92CV554(NPM/DRH), 2004 WL 1083244, at *2 (N.D.N.Y. May 12, 2004) (internal citations omitted).  The Second Circuit has emphasized that "the primary consideration" in determining whether good cause has been shown "is whether the moving party can demonstrate diligence." Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

## III. DISCUSSION

UConn objects to the Plaintiff's motion to amend on two grounds.  First, UConn argues that the "good cause" standard under Fed. R. Civ. P. 16(b) should apply here because the deadline for filing amended pleadings in this case has long expired.  Under this standard, UConn claims, denial of leave to amend is justified given the very late stage of the case.  Discovery closed on July 7, 2008, the Court has ruled on UConn's summary judgment motion, and the Second Circuit heard an interlocutory appeal on

that motion on December 8, 2009 and a ruling is imminent.  UConn also argues that the parties have completed discovery and are ready for trial, but that they would have to move to reopen discovery as only limited discovery has been conducted on the Plaintiff's new claim for the limited purpose of defending against his motion for a preliminary injunction.  UConn further argues that permitting the Plaintiff to amend his complaint for what would be the fifth time would require further dispositive pleading practice at such a late time in the litigation process that it will significantly burden and prejudice UConn.

UConn cites three cases in support of its position.  First it cites <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 202 (2d Cir. 2007).  In <u>McCarthy</u>, the defendants filed for summary judgment nearly two years after filing of original complaint and after the close of discovery.  The Court held that the inordinate delay justified the district court's denial of the plaintiff's motion for leave to amend.  Next, UConn cites <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191 (2d Cir. 2008), where the Second Circuit noted that the burden and prejudice to the defendant is a significant factor justifying denial of leave to amend.  In <u>Bradick v Israel</u>, 377 F.2d 262, 263 (2d Cir. 1967), the Second Circuit affirmed the district court's denial of a motion to amend where "substantial delay would result as the amendment consisted of novel theories of law with new problems of proof."

The Second Circuit has also upheld a denial of leave to amend in <u>Daniel v. American Board of Emergency Med.</u>, 428 F.3d 408, 442 (2d Cir. 2005) to substitute an "untested theory of antitrust injury for one that was deficient as a matter of law."  Likewise, in <u>Barrows v. Forest Labs, Inc.</u>, 742 F.2d 54, 58-59 (2d Cir. 1984), the Second

6

Circuit upheld the district court's denial of leave to amend a complaint to effect "a radical shift" in the theory of recovery.  Finally, in <u>Min Jin v. Metro Life Ins.</u>, 310 F.3d 84, 101 (2d Cir. 2002), the Second Circuit upheld the district court's denial of a motion to amend the complaint filed after summary judgment and years after the original complaint.

UConn alternatively argues that, even were the Court to consider the Plaintiff's motion under the more lenient Fed. R. Civ. P. 15 analysis, it should conclude that the prejudice to the Defendants bars the proposed amendment.  <u>See</u>, <u>e.g.</u>, <u>Krumme v. WestPoint Stevens Inc.</u>, 143 F.3d 71, 88 (2d Cir. 1998); <u>Messier v. Southbury Training Sch.</u>, No. 3:94-CV-1706 (EBB), 1999 WL 20907, at *4 (D. Conn. Jan. 5, 1999) ("The classic situation where courts deny leave to amend arises when a party files a Rule 15(a) motion after discovery has been completed or the nonmoving party has filed for summary judgment.").

UConn also argues that leave to amend should be denied on the basis that the proposed amendment is futile because the Eleventh Amendment bars the claim that the Plaintiff seeks to add.  The Plaintiff's newly asserted claim with respect to his alleged dismissal from the UTC Chair position is brought pursuant to Conn. Gen. Stat. § 31-51q against the University only.  The Supreme Court has held that the Eleventh Amendment prohibits a private party from suing a state in federal court unless Congress unequivocally expresses its intent to abrogate that immunity or a state waives its immunity.  <u>See</u> <u>Edelman v. Jordan</u>, 415 U.S. 651 (1974); <u>In re Charter Oak Assocs.</u>, 361 F.3d 760, 765 (2d Cir. 2004).  Eleventh Amendment immunity extends to agencies and

7

departments of a state.  See Pennhurst State School & Hosp. v. Halderman, 465 .S. 89, 100 (1984).  The State of Connecticut has not waived its Eleventh Amendment immunity to actions brought pursuant to Conn. Gen. Stat. § 31-51q in federal court.  See Cook v. McIntosh, No. CIV. 3:97CV773 (AHN), 1998 WL 91066, at *6 (D. Conn. Feb. 20, 1998) ("There is no support for the contention that by the enactment of Conn. Gen. Stat. § 31-51q the state intended to waive its Eleventh Amendment immunity from suit in federal court.").  UConn contends that, although it waived Eleventh Amendment immunity with respect to the state law claims set forth in the Plaintiff's Third Amended Complaint by removing this case to federal court, it has not consented to the Plaintiff's newly asserted claim under Conn. Gen. Stat. § 31- 51q.  Therefore, UConn argues, the Eleventh Amendment bars this Court from hearing the Plaintiff's state law claim against it.  See Alabama v. Pugh, 438 U.S. 781 (1978); Henrietta v. Bloomberg, 331 F.3d 261, 287-88 (2d Cir. 2003); Santiago v. N.Y. State Department of Correctional Services, 945 F.2d 25 (2d Cir.1991).

In response to UConn's objection to his motion to amend, the Plaintiff makes the following arguments.  First, the Plaintiff argues that he should be permitted to amend his complaint because he satisfies the Fed. R. Civ. P. 16(b) standard.  As stated earlier, "the primary consideration" in determining whether good cause has been shown "is whether the moving party can demonstrate diligence."  Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).  Here, the Plaintiff argues, he acted with diligence in seeking to amend his complaint.  The events giving rise to his newly asserted retaliation claim culminated in UConn's announcement on February 8, 2010

8

that the Plaintiff would not continue as the UTC Chair.  The Plaintiff moved to amend his complaint on March 11, 2010, less than 5 weeks later.  No amount of diligence could have enabled the Plaintiff to file a motion to amend the complaint appreciably sooner than he did.  The Plaintiff argues that, in circumstances in which facts giving rise to a claim of retaliation occur after the deadline to amend pleadings, courts have found good cause to amend.  See, e.g., Lincoln v. Potter, 418 F. Supp. 2d 443, 453 (S.D.N.Y. 2006) (allowing plaintiff to amend complaint to add claims based upon retaliation that occurred after the deadline because plaintiff could not reasonably have been expected to comply with a deadline that preceded the retaliation); Robinson v. Town of Colonie, No. 91-CV-1355, 1993 WL 191166, at *3 (N.D.N.Y. June 3, 1993) (finding good cause where the reason to seek amendment occurred after the deadline had passed).

Next, the Plaintiff argues that UConn would suffer no undue prejudice if the proposed amendment is permitted.  The Plaintiff claims that UConn has itself invited delay on numerous occasions, as it filed seven different motions to extend time in this case.  At present, no trial date has been set because of the pending interlocutory appeal.  Since the parties are awaiting the Second Circuit's decision, the Plaintiff argues that there is sufficient time for UConn to prepare to defend the new retaliation claim.  The Court notes that the end of the 2009-2010 Second Circuit term is imminent and a decision will likely be issued soon.

UConn responds by contending that the Defendants would also be prejudiced because the proposed amendment would substantially delay the resolution of the pending claims.  First, it notes that while some discovery has been conducted on the

9

proposed claim, it only took the Plaintiff's deposition and received document production from him for the limited purpose of defending against the Plaintiff's motion for injunctive relief.  In addition, UConn challenges the Court's jurisdiction to hear the case, citing the Eleventh Amendment, and would file a motion for summary judgment if the amendment was allowed.

Finally, the Plaintiff replies by arguing that his claim is not barred by the Eleventh Amendment because UConn has waived any claim of immunity by its litigation conduct in removing this case to federal court.  In support of his reply, the Plaintiff relies on <u>Lapides v. Bd. Of Regents of University System of Georgia</u>, 535 U.S. 613, 619, 122 S.Ct. 1640 (2002), in which the Supreme Court held that where a state university voluntarily removes a case to federal court, it voluntarily invokes that court's jurisdiction.  As noted in <u>Lapides</u>, a defendant cannot "(1) [ ] invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) [ ] claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." <u>Id.</u> at 619.

Because the Plaintiff seeks to amend his complaint after expiration of the deadline to do so in the Court's scheduling order, he must satisfy the "good cause" requirement of Fed. R. Civ. P. 16(b).  As noted previously, "a finding of good cause depends on the diligence of the moving party."  <u>Parker</u>, 204 F.3d at 340. "In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence."  <u>Lincoln</u>, 418 F. Supp. 2d at 454.  The Court finds that the Plaintiff has satisfied the good cause standard.

As the Plaintiff pointed out in his brief and during oral argument, the events giving rise to his new retaliation claim began in the Fall of 2009 and culminated on February 8, 2010 when UConn announced that he would not continue as the UTC Chair, long after the deadline the Court set for amending pleadings.  The Plaintiff moved to amend his complaint on March 11, 2010, less than five weeks later.  Clearly, no amount of diligence would have permitted the Plaintiff to discover the facts supporting his claim prior to expiration of the deadline for amendment of the  pleadings.  Thus, the Plaintiff has shown "good cause" from a diligence standpoint to modify the scheduling order.  <u>See</u> <u>id.</u> at 454 (permitting motion to amend to allege retaliation claim where events giving rise to claim occurred after the deadline for amendments in the scheduling order had passed, but denying motion to amend to allege hostile work environment claim because facts underlying that claim were known to the plaintiff at the time he filed his action); <u>Robinson</u>, 1993 WL 191166, at *3 (finding good cause to amend scheduling order where the reason to seek amendment occurred after the deadline had passed).

This, however, does not end the inquiry.  Even if the Court finds that the Rule 16(b) "good cause" standard has been satisfied, it must then proceed to consider whether the Plaintiff's new retaliation claim survives scrutiny under Rule 15.  <u>See</u> <u>Lincoln</u>, 418 F. Supp. 2d at 454-55 (considering motion to amend under both Fed. R. Civ. P. 16(b) standard and Fed. R. Civ. P. 15 standard).

Under Rule 15(a), "[t]he court should freely give leave [to amend pleadings] when justice so requires."  The Supreme Court has instructed that leave to amend should be

granted "absent any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment[.]"  Foman v. Davis, 371 U.S. 178, 182 (1962).  In the present circumstances, the primary factors in contention are undue delay, prejudice, and futility of the proposed amendment.

Citing undue delay and prejudice, UConn argues that leave to amend should be denied because discovery in this case has closed, the Court has entered a decision on summary judgment, and a ruling on the Court's denial of summary judgment, now on appeal, is imminent.  In these circumstances, UConn contends, it would be unduly prejudiced by the proposed amendment because it would necessitate substantial preparation, including discovery and dispositive motion practice.  However, as the Plaintiff correctly points out, the cases that UConn cites in support of its claims of undue delay and prejudice are inapposite because they involve situations in which a party moved to amend on the basis of facts that were either known or reasonably could have been discovered at the outset of the case.  The more relevant cases are those cases where, as here, courts analyzed a retaliation claim that was based upon facts that occurred after expiration of the deadline for amending pleadings and after the close of discovery but before trial.

Research has revealed three relevant cases.  First, in Lincoln v. Potter, the plaintiff, a letter carrier for the United States Postal Service, filed an age discrimination suit related to the redesign of his postal route.  418 F. Supp. 2d at 447.  After expiration

12

of the deadline to amend pleadings and the close of discovery, the plaintiff filed a motion to amend his complaint to assert two new causes of action, the first for hostile work environment and the second for retaliation that allegedly resulted in a material change in his work conditions after he filed suit and made discovery demands.  Id. at 454.  The district court denied leave to amend to assert the hostile work environment claim because the facts underlying this claim were known to the plaintiff at the time that he filed the action.  Id.  However, the district court granted leave to amend to assert the retaliation claim, finding that there was no undue delay or prejudice because the impetus of the retaliation claim did not arise until after the close of discovery, and the plaintiff moved to amend his complaint less than a month after the alleged retaliation occurred.  Id.

Second, in O'Sullivan v. New York Times Co., No. 96 Civ. 6143(LAP), 1997 WL 762050, at *1 (S.D.N.Y. Dec. 8, 1997), the plaintiffs brought suit alleging that they were terminated based on their age as part of a corporate downsizing.  Nearly one year after the suit was filed, plaintiff Mooney, who had been rehired by the defendant for a position in a different department, was told during an interview for a managerial position that he would have a better chance of obtaining the position if he dropped his lawsuit.  Id.  One month later, in April 1997, he was informed that he had not been selected for the position.  Id.  Subsequently, in November 1997, one week before discovery was scheduled to close, the plaintiffs moved to amend their complaint to assert a retaliation claim on behalf of Mooney for the defendant's failure to hire him for the managerial position.  Id.  The district court denied leave to amend, finding that the plaintiffs' delay

13

of seven months in filing a motion to amend after the events giving rise to the retaliation claim was not justified in light of the approaching discovery deadline and the defendant's stated intention to file a motion for summary judgment.  Id. at *2.  The district court further found that the defendant would be prejudiced even though it had known since July 1997 of the potential retaliation claim because the claim was not fully developed and amending the complaint would result in additional discovery on the eve of the deadline.  Id.  Finally, the district court noted that the alleged retaliation took place two years after the corporate downsizing which gave rise to the underlying complaint, and discovery with respect to the retaliation charge would involve matters different from the issue of corporate downsizing and relate to events remote in time from the downsizing.  Id.

Third, in Smith v. Cadbury Beverages, Inc., 942 F. Supp. 150, 152 (W.D.N.Y. 1996), the plaintiff brought suit alleging that his employer discriminated against him based upon his race and in retaliation for bringing prior administrative and legal complaints against the defendant.  Subsequently, following the close of discovery and while the defendant's motion for summary judgment was pending, the plaintiff filed a motion to amend his complaint to assert a claim of retaliation resulting from his suspension and termination in October 1995, two years after the events underlying his original complaint.  Id. at 159.  The district court denied leave to amend on the basis that the defendant would suffer prejudice if the amendment was permitted.  Id.  The district court explained:

> In this case, Smith's new claims are based upon different factual circumstances, and in large part require application of different law.

14

> **Accordingly, permitting Smith to amend essentially would open up an entirely new lawsuit. This would be highly prejudicial to Cadbury, which has litigated the original claims and, but for my granting its motion for summary judgment, would be trial ready . . . . Moreover, because Smith may still be able to assert a separate action (assuming his new claims are legally sufficient), he is not significantly prejudiced by my denying his motion to amend.**

Id.

In this case, the Plaintiff moved to amend his complaint within weeks of the events giving rise to his new retaliation claim. However, the Court must consider UConn's claims of undue prejudice. As noted in O'Sullivan and Smith, permitting an amendment years after the plaintiff originally filed suit and after the discovery deadline expired based upon a different set of factual circumstances would result in significant prejudice to the defendant because it would essentially create an entirely new lawsuit and necessitate substantial additional discovery at a late stage of the litigation process.

Turning to the issue of futility, UConn also makes the argument that the proposed amendment would be futile because the Eleventh Amendment bars the Plaintiff's new retaliation claim, which is brought pursuant to Conn. Gen. Stat. § 31-51q. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 451 U.S. 651, 662-63 (1974). Eleventh

Amendment immunity extends to agencies and departments of a state, including state universities.  See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Dube v. State University of New York, 900 F.2d 587, 594 (2d Cir. 1990) (noting that the state is the real party in interest for Eleventh Amendment purposes when SUNY is sued). "In seeking to delineate the Eleventh Amendment boundaries of waiver, the Supreme Court has held that a state waives its immunity 'either if [it] voluntarily invokes [a federal court's] jurisdiction, or else if [it] makes a 'clear declaration' that it intends to submit itself to [a federal court's] jurisdiction." In re Charter Oak Associates, 361 F.3d 760, 767 (2d Cir. 2004).

UConn is correct that there has been no applicable statutory waiver.  A court may not find a statutory waiver "unless the state has spoken in the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."  Minotti v. Lensink, 798 F.2d 607, 610 (2d Cir. 1986).  A state's decision to waive its immunity also requires that it determine where it may be sued.  Id. Accordingly, "there will be no waiver of immunity against federal suit unless the state specifies its intention to consent to suit in federal court." Id.  Here, the Plaintiff seeks to amend his complaint to bring a retaliation claim under Conn. Gen. Stat. § 31-51q.  As the District of Connecticut has held,

> There is no support for the contention that by the enactment of Conn. Gen. Stat. § 31-51q the state intended to waive its Eleventh Amendment immunity from suit in federal court.  First, the statute does not contain any language that expressly waives this immunity.   Second, although Connecticut courts have held that the statute constitutes a waiver of sovereign immunity [in state court], the decisions involved waiver in state actions only.

Cook v. McIntosh, No. CIV. 3:97CV773 (AHN), 1998 WL 91066, at *6 (D. Conn. Feb. 20, 1998).

A State may also waive its Eleventh Amendment immunity based upon its litigation conduct.  The Supreme Court has expressly held that a States waives its immunity to suit in federal when it voluntarily removes a case from state court to federal court.  Lapides v. Bd. Of Regents of University System of Georgia, 535 U.S. 613, 619, 122 S.Ct. 1640 (2002).  As noted in Lapides, a defendant cannot "(1) [ ] invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) [ ] claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand."  Id.  Here, UConn clearly waived its Eleventh Amendment immunity with respect to the underlying complaint by removing the case from state to federal court, thereby invoking this Court's jurisdiction.  However, UConn now argues that, although it waived immunity as to the claims asserted in the underlying complaint, it has not (and will not) consent to the new retaliation claim that the Plaintiff seeks to add, and therefore it has not waived Eleventh Amendment immunity with respect to this claim.

The parties do not cite and research has not revealed any cases within the Second Circuit that directly address the present situation.  However, a case from the Ninth Circuit is instructive.  That case held that the State Regents waived their Eleventh Amendment immunity over new claims asserted in an amended complaint because they had removed the original complaint to federal court.  See Embury v. King, 361 F.3d 562, 565 (9th Cir. 2004).  Citing Lapides, the Ninth Circuit held that, once immunity is waived

17

by removal, the federal court's power extends to the entire case, not just to the claims that had already been made at the time of removal.  Id.  According to the Ninth Circuit, "[a]llowing a State to waive immunity to remove a case to federal court, then 'unwaive' it to assert that the federal court could not act, would create a new definition of chutzpah."  Id. at 566.

While the Ninth Circuit's decision in Embury was well reasoned in the context of that case, where the proposed amendment related to the same factual events giving rise to the original complaint, the present situation is distinguishable based upon the rationale underlying the principle of waiver based upon litigation conduct.  As the Supreme Court explained in Lapides, "an interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages."  Id. at 620.  Given this rationale, it would seem fair to draw the conclusion that UConn has not waived its Eleventh Amendment immunity as to the Plaintiff's new retaliation claim for the same reason that the Court finds that the Plaintiff acted diligently; namely, because the claim relates to a set of factual circumstances distinct from the underlying suit.  Therefore, no inconsistency, anomaly, or unfairness will result if leave to amend is denied and the Plaintiff is required to pursue this claim in state court.  Nor would the Plaintiff be prejudiced because there is an available forum from which to seek redress for his new retaliation claim.  Balanced against the undue prejudice to the Defendants of granting the motion to amend, which

18

would necessitate the opening of discovery at the precipice of setting a trial date, the proper resolution of this dispute is clearly to deny the motion to amend.  Therefore, the Plaintiff's motion to amend is DENIED.

In light of the Court's ruling denying the Plaintiff's motion to amend, the Court lacks jurisdiction over the Plaintiff's Conn. Gen. Stat. § 31-51q against UConn for removing him from the UTC Chair position.  Thus, he cannot obtain preliminary injunctive relief from the Court on this claim.  See Stewart v. United States Immigration and Naturalization Service, 762 F.2d 193, 198 (2d Cir. 1985) (finding that district court lacked jurisdiction over plaintiff's motion for preliminary injunctive relief relating to claim of improper suspension without pay because plaintiff failed to commence an action in district court with regard to this claim).  Accordingly, the Plaintiff's motion for preliminary injunction is also DENIED.

## IV.  CONCLUSION

Based upon the above reasoning, the Plaintiff's motion to amend [Doc. #92] and motion for preliminary injunction [Doc. #93] are DENIED.

IT IS SO ORDERED

_____
/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  June 3, 2010.

19